ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 763-7227
E-mail: andrew@packardlawoffices.com
         wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

Richard J. Idell (State Bar No. 069033)
ORY SANDEL, (State Bar No. 233204)
DICKENSON, PEATMAN & FOGARTY, P.C.
1500 First Street, Ste. 200
Napa, California 94559
Telephone: (707) 261-7000
Email:    ridell@dpf-law.com
          osandel@dpf-law.com

*Attorneys for Defendants, Mulas Dairy Company and Michael Mulas*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>  Plaintiff,<br><br>v.<br><br>MULAS DAIRY COMPANY AND MICHAEL MULAS,<br><br>  Defendants. | Case No: 3:23-cv-00338-AGT<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Conference Date: April 28, 2023<br><br>Time:       2:00 p.m.<br>Location:   (Zoom Webinar)<br><br>The Honorable Magistrate Judge Alex G. Tse |

This Joint Case Management Conference Statement is submitted on behalf of Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA" or "Plaintiff") represented by the Law Offices of Andrew L. Packard, and Defendants MULAS DAIRY COMPANY and MICHAEL MULAS ("Defendants") represented by Richard J.

Idell and Ory Sandel of Dickenson Peatman & Fogerty, pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 16-9, the Standing Order for All Judges of the Northern District of California-Contents of Joint Case Management Statement, and the Court's Order Setting Initial Case Management Conference and ADR Deadlines, dated January 24, 2023 (collectively "Rules and Orders").

As required by the Rules and Orders, the Parties briefly set forth their jointly held view on the following matters, unless otherwise specifically noted as a separate view.

1. **JURISDICTION AND SERVICE**.

    A. **Plaintiff's Statement**. This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (action arising under the laws of the United States).  Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the alleged violations is located within this judicial district.  Pursuant to Local Rule 3-2(e), intra-district venue is proper in San Francisco, California because the sources of the alleged violations are located within Sonoma County.

    On March 10, 2023, the Parties filed a stipulation waiving service of the summons and deeming the service of the Complaint, the Summons, and the filings in the docket, including the Court's Oder Setting Initial Case Management Conference and ADR Deadlines to have been perfected on March 10, 2023.  ECF No. 9.  To facilitate settlement discussions, the Parties' further stipulated that Defendants shall have until April 28, 2023 to file a response to the Complaint.

    Plaintiff submits that a Case Management Conference Statement is not the proper place to seek a stay or argue the merits of a motion to dismiss.

    B. **Defendants' Statement**. Unless the Court stays this Matter *sua sponte* for the reasons set forth in Section 2 "Facts", Defendants will, by April 28, 2023, file a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim and/or in the alternative for a stay of this action, including discovery, as more fully discussed below.

1   Defendants agree that *if* the Court had subject matter jurisdiction in this matter, that venue is
2   proper in this Court. Defendants agree that they entered into a Stipulation by the terms of
3   which Defendants' response to the Complaint is due on April 28, 2023.  A Motion to
4   Dismiss for lack of subject matter jurisdiction and failure to state a claim and/or in the
5   alternative for a stay of this action including discovery, is proper as more fully discussed
6   below and will be filed by April 28, 2023.

7   **2.    FACTS.**

8        A.    **Plaintiff's Statement.** This case is a Federal Water Pollution Control Act
9   ("Clean Water Act" or "Act") citizen suit enforcement action filed by CSPA under Section
10  505 of the Clean Water Act, 33 U.S.C. § 1365.  The Complaint alleges that Defendants have
11  violated and continue to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a)
12  by discharging pollutants from point sources at Defendants' 300-acre dairy farm, located at
13  2034 Freemont Drive, near Sonoma, California ("the Facility").  The Facility discharges
14  storm water from the Facility into an unnamed creek, which drains to Shell Creek, then to
15  Steamboat Slough, which is a tributary of the Napa Slough, which discharges to Sonoma
16  Creek and ultimately to San Pablo Bay and Pacific Ocean.  These water bodies are "waters
17  of the United States" within the meaning of the Act.

18        Defendants are subject to the State of California's General Industrial Permit for
19  storm water discharges, State Water Resources Control Board ("State Board") Water
20  Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ,
21  Water Quality Order No. 97-03-DWQ, Water Quality Order No. 2014-0057-DWQ, and
22  Water Quality Order No. 2015-0122, National Pollutant Discharge Elimination System
23  ("NPDES") General Permit No. CAS000001 (hereinafter "General Permit").

24        More specifically, Plaintiff alleges that Defendants discharge storm water with
25  excessive pollutant concentrations from the Facility into waters of the United States without
26  applying certain requisite pollution control technologies, and that such pollutant
27  concentrations exceed certain water quality standards in the General Permit, as well as
28  benchmark levels established by the United States Environmental Protection Agency

("EPA") and the State Board.  CSPA also alleges that Defendants have failed to implement the required Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  CSPA further alleges that Defendants continue to fail to develop and implement a legally adequate Storm Water Pollution Prevention Plan, and a legally adequate Monitoring Implementation Plan.

Plaintiff submits that a Case Management Conference Statement is not the proper place to seek a stay or argue the merits of a motion to dismiss.

**B.     Defendants' Statement.**  Defendant Mulas Dairy, Inc. ("Mulas Dairy") owns property in Sonoma County which until recently included an organic dairy operation. The Mulas family has owned and farmed the land as a family farm for over 100 years and operated the dairy for most of that time. The Mulas family are considered by their community to be good stewards of their land and have been publicly honored by their community for same. The Mulas family owns or controls some 820 acres of land ("Mulas Land"). The dairy operation was comprised of approximately 60 acres.

Mulas Dairy does not discharge storm water and has not discharged storm water. Neither has Michael Mulas. Any allegations of discharge of storm water are fully and flatly denied. The statement above by Plaintiff: "The Facility discharges storm water from the Facility into an unnamed creek, which drains to Shell Creek, then to Steamboat Slough, which is a tributary of the Napa Slough, which discharges to Sonoma Creek and ultimately to San Pablo Bay and Pacific Ocean." has no factual basis.  All of the other allegations of Plaintiff regarding pollution of the environment are also factually inaccurate and are denied.

The dairy operation itself was a self – contained area within the Mulas Land that is, in simple terms, to use an analogy, built like a "bathtub", that is, all storm water falling on the dairy facility drained within the dairy facility  and then out to a series of five specially designed containment ponds which are regularly maintained and which are designed to weather a once in a 100 year 24 hour storm event. Storm water did not leave the dairy facility nor the Mulas Land when the dairy was fully operational, nor now.

1   All of the dairies in California, at the time of the filing of the complaint herein, located in the Bay Area, are regulated under California Regional Water Quality Control Board San Francisco Region ("Regional Water Board"), Order No. R2-2016-0031 ("WDR 2016-0031") or its predecessor Order, not under the General Permit (defined above) as alleged by Plaintiff. Mulas Dairy is a small family operation that, as a consequence of misinformation and misunderstanding, did in fact enroll, in the General Permit years ago. Mulas Dairy also enrolled in the Water Discharge Requirements Order, No. R2-2015-0031 on August 11, 2015. No. R2-2015-0031 was superseded by Order No. 2016-0031 ("WDR 2016-0031"). Thus, although Mulas Dairy was enrolled in the General Permit, it was not required to be and its enrollment was superfluous. In 2021, on May 20, 2021, *before* this lawsuit was filed, and *before* Mulas Dairy had any idea that a Notice of Violation or lawsuit would be filed, Mulas Dairy wrote to the Regional Water Board and advised them that "the 2021 NPDES report will be the last one", noting that Mulas Dairy had enrolled in the "Tier 2" program. However, that letter was not effective because the Notice of Termination had to be filed online.

The Tier 2 reference is pursuant to WDR 2016-0031. Mulas Dairy did not realize that a formal online Notice of Intent to terminate was required. The history of Mulas Dairy's permitting in moving from the General Permit to the WDR 2016-0031 is consistent with the history of regulation by the Regional Water Board. As early as 2009 the Regional Water Board recognized that: "Coverage under the General Storm Water Permit is not required for CAFOs that do not directly or indirectly discharge storm water associated with industrial activities to waters of the U.S. A dairy operator may be able to implement measures that prevent all storm water discharges, and thus may not require coverage under the General Storm Water Permit."

Also, as early as 2009, the Regional Board recognized that: "Historically, some dairies enrolled under the General Storm Water Permit for reasons other than having a discharge that requires a permit. Those dairies are not required to continue their enrollment if they do not discharge *storm water associated with industrial activities*

to *waters of the U.S.*; they may submit a "*Notice of Termination*" (*NOT*) to the Regional Water Board.  NOTs take effect only when they are approved by the Regional Water Board." The foregoing two quotes are from a summary of Permitting Requirements for Dairies in California written in 2009 by John Menke, who, at the time was with the State Water Board.

Such was the history of the Mulas Dairy.

On January 23, 2023, a Notice of Termination of enrollment in the General Permit ("Notice of Termination") was filed on – line with the Regional Water Board citing enrollment and compliance with WDR 2016-0031 as the reason. The Notice of Termination was filed the same date that the Complaint in this matter was filed.

The Regional Water Board regulates and administers both the General Permit and the dairy permit WDR 2016-0031. On March 17, 2023, the Regional Water Board held two inspections at the Mulas property: (1) an inspection to review compliance with WDR 2016 – 0031 and (2) an inspection for approval the Notice of Termination of the General Permit. It is expected that the inspections will result in reports showing compliance with WDR 2016 – 0031 and an approval of the Notice of Termination. The Notice of Termination, if approved, as expected, will be approved as of January 23, 2023.

So, if the Notice of Termination is approved effective January 23, 2023, which is expected, then there is no claim for non-compliance with the General Permit, indeed, there is nothing for the citizen enforcer to enforce and there is no reasonable likelihood of any continuing violation (even assuming that there was non-compliance, which is denied.

In addition, as a factual matter, Mulas Dairy decided, as of the week of April 3, 2023, to sell its herd and terminate its dairy operation. A material factor in that decision is the cost and distraction of this litigation which has financially overwhelmed this small family operation. Eighty percent (80%) of the herd has already been sold and will be removed from the premises by the end of May, 2023.  The balance of the herd, twenty percent (20%) will be removed from the dairy and the dairy operation will be shuttered before next winter begins, by approximately October 31, 2023.

So, in addition to the Notice of Termination rendering the claim of Plaintiff moot, because of the sale of the herd, and the shuttering of the dairy, there is no dairy operation to regulate. Even if the General Permit were applicable, which is denied and disputed, there is no longer a concentrated animal feeding operation ("CAFO") as alleged by Plaintiff, and therefore no coverage under the General Permit. In addition, as a result of the sale of the herd, and the shut-down of the dairy operation, Mulas will terminate coverage under the WDR 2016-0031 as well. There is no reasonable likelihood of any continuing coverage or any continuing violation.

Moreover, neither the Notice of Violation nor the Complaint allege where the alleged points of discharge are (referred to as point sources), except in the most general of terms. It appears that Plaintiff is on a fishing expedition to find some hook to hang their hat on.

## 3. **LEGAL ISSUES.**

A.  **Plaintiff's Statement.**  The Clean Water Act is a strict liability statute, and the primary legal issues will focus on the compliance requirements of the General Permit, as applied to Defendants.  Also at issue is the scope of 40 C.F.R. § 122.23, which applies to Concentrated Animal Feeding Operations ("CAFOs") based on the size and nature of their operations.  See Complaint, at ¶¶ 36-38, and 41 for the relevant pleading allegations.

Plaintiff submits that a Case Management Conference Statement is not the proper place to argue the merits of a motion to dismiss.

B.  **Defendants' Statement**.  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.* (1987) 484 U.S. 49 held that a suit under the Clean Water Act must allege and prove an ongoing Clean Water Act violation. The Plaintiff cannot maintain an action for purely past violations. There will be no ongoing violation and Plaintiff will not meet its burden for two reasons: (1) Defendant's enrollment in the General Permit will be terminated and (2) the herd has been sold and the dairy operation will be terminated before next winter.

## 4. **MOTIONS.**

A.  **Plaintiff's Statement.**  There are no pending motions.  CSPA anticipates filing discovery motions as necessary, and a motion for summary judgment or summary

adjudication. If it is a prevailing party, CSPA will seek its reasonable attorney fees and costs, unless those fees and costs are accounted for in a settlement.

   B.   **Defendants' Statement.** Defendants' response is due on April 28, 2023. Defendants are filing a Motion under Federal Rule of Civil Procedure 12 (b) (1) and 12 (b) (6) for lack of subject matter jurisdiction and failure to state a claim. Alternatively, at the same time, Defendants will move for a stay of the proceedings, including discovery, pending receipt of the decision of the Water Board on the approval of the Notice of Termination and pending completion of the finalization of sale of the herd and the shutting down of the dairy operation. Defendants anticipate filing a motion for protective order if necessary and discovery motions as necessary. Defendants will file a Motion for Summary Judgment or Motion for Summary Adjudication if the matter is not resolved at an earlier stage by the Motion for Lack of Subject Matter Jurisdiction and Failure to State a Claim.

5.   **ANTICIPATED AMENDMENTS TO PLEADINGS.**

   A.   **Plaintiff's Statement.** After receiving Defendants' discovery responses, CSPA may seek to amend the Complaint to reflect claims of additional permit violations by Defendants, additional discharges without Clean Water Act permit coverage, or to join additional defendants.

   B.   **Defendants' Statement.** Defendants do not anticipate amending any pleadings at this time but reserve the right to do so.

6.   **EVIDENCE PRESERVATION.**

   The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7.   **DISCLOSURES.**

   At the Rule 26(f) conference, the parties agreed to serve their initial disclosures and either serve their documents or a description of the categories of documents on April 21, 2023.

**8.    DISCOVERY.**

A.    **Plaintiff's Statement.**  Settlement discussions reached an impasse on April 18th, when CSPA learned that Defendants intend to file a motion to dismiss and stay discovery instead.

CSPA will conduct a combination of site inspections, written discovery and depositions, and has propounded inspection requests for both dry and wet formal site inspections of the Facility starting on May 10, 2023.  CSPA anticipates propounding discovery on the nature and extent of potential sources of pollution in Defendants' discharges from the Facility; information relating to Defendants' interactions with the Regional Water Quality Control Board and the California State Water Resources Control Board; and all information pertinent to the penalty factors to be considered under the Act, including, but not limited to, Defendants' financial information relevant to the penalty factors to be considered under the Act.  CSPA also intends to depose Defendants' employees, managers and other agents, as well as agency personnel, who may have information relevant to the case.

Plaintiff submits that a Case Management Conference Statement is not the proper place to seek a stay or argue the merits of a motion to dismiss.

B.    **Defendants' Statement.**  Unless the Court stays this Matter *sua sponte* for the reasons set forth above, Defendants will be filing a Motion to Dismiss for lack of subject matter jurisdiction and//or failure to state a claim, and/or, in the alternative, for a stay of all discovery in the matter pending receipt of the decisions of the Water Board on the approval of the Notice of Termination and review of WDR 2016-0031  and/or pending completion of the sale of the herd and the shutting down of the dairy operation.  If the case is not dismissed, all discovery should be stayed pending the decision of the Water Board on the approval of the Notice of Termination and review of WDR 2016-0031 and/or pending completion of the sale of the herd and the shutting down of the dairy operation, including without limitation two Requests for Inspection of Land served on March 29, 2023 by the Plaintiff.  Defendants should not be burdened with discovery pending the occurrence of

matters that will render the case moot. If the case is not dismissed, and discovery goes forward, discovery should be appropriately limited in light of the sale of the herd and the shuttering of the dairy operation, and, if necessary, Defendants will file a Motion for Protective Order. If discovery goes forward, Defendants will seek discovery on Plaintiff's theory of any remaining claim of liability and damages which will include written discovery by document requests, interrogatories, requests for admission and depositions, including a deposition under Federal Rules of Civil Procedure, Rule 30 (b) (6) for the person most knowledgeable of Plaintiff on various issues, and other witnesses with knowledge of the facts relevant to the dispute. Discovery will include discovery of all written and electronic documents in Plaintiff's possession concerning the allegations of liability and damages. Discovery will include depositions of Plaintiff's experts, if any there are. Plaintiff and Defendants have agreed by a written stipulation to an order sending this case to an early settlement conference. In that stipulation the parties agreed: "the Parties are interested in resolving this matter without unnecessary litigation". However, immediately after the Rule 26 meeting Plaintiff served two physical inspections of the premises set for May 10, 2023. Such expensive, invasive discovery seeking an inspection of the 820-acre Mulas Land is exemplary of why a stay is necessary in this matter if the matter is not dismissed by the Rule 12 (b) (1) and (6) motion.

**9.    RELATED CASES.**  The Parties are not aware of any related cases.

**10.   RELIEF.**

   A.   **Plaintiff's Statement.** CSPA seeks civil penalties, declaratory and injunctive relief, and costs as authorized by the Clean Water Act, 33 U.S.C. § 1365(d). The Clean Water Act authorizes civil penalties of up to $59,973 per day per violation for all Clean Water Act violations occurring after November 2, 2015, for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1 - 19.4.

   B.   **Defendants' Statement.** Defendants deny liability and Plaintiff's entitlement to damages in the sum alleged, or any other sum, or sums, at all, and deny any entitlement

to claim attorneys' fees and costs. Defendants also dispute the appropriateness of injunctive or other equitable relief as alleged or at all in light of the shuttering of the dairy operation.

**11.  SETTLEMENT AND ADR.**

    A.    **Plaintiff's Statement.**  The parties agreed to meet at the Facility on January 31, 2023, with counsel and experts present, for a settlement-protected inspection and discussion. On February 15, 2023 CSPA provided a comprehensive settlement demand including all injunctive and monetary terms to be included in a Consent Decree to be entered in this Court.  On April 18, 2023, Defendants ended the discussion with notification that they would file the various motions discussed herein.

    While the settlement discussions were still taking place in early April, the parties filed a joint request for a settlement conference with Magistrate Spero and the matter has been referred for a scheduling call.

    Plaintiff submits that a Case Management Conference Statement is not the proper place to seek a stay or argue the merits of a motion to dismiss.

    B.    **Defendants' Statement**.    It has been Defendants' view from the outset of this dispute, even before the Complaint was filed, to settle the matter, since it has no merit. The Notice of Violation was dated November 22, 2022, and was served shortly thereafter. To that end, Defendants agreed to an inspection of the premises on January 31, 2023, even before the Complaint was filed on January 23, 2023. The inspection was attended by Plaintiff's counsel and an expert, Ian Wren, who spent over two hours on the premises of the Mulas Land on January 31, 2023.  Defendants were provided with a full tour of the dairy facility and were permitted to take photographs, subject to a settlement stipulation and under the mediation privilege. Defendants urged Plaintiff to hold off on filing the complaint, in order to discuss settlement, but Plaintiff would not agree.

    Thereafter, Plaintiff served a demand in settlement on February 15, 2023. On March 17, 2023, Defendant served a response to the settlement demand.

    Initially, in January, and throughout February, 2023, and up until March 7, 2023, the parties discussed agreement on a mediator and attending a private meditation. To that end,

Defendants suggested five (5) mediators. On March 7, 2023, Plaintiff, for the first time, stated that they would not agree to mediate the case. However, Plaintiff stated that they would be agreeable to a settlement conference with Magistrate Judge Joseph Spero. On March 7, 2023, Plaintiff proposed a stipulation for such a settlement conference. On April 5, Defendants' counsel proposed a further draft of the stipulation for settlement conference. The parties have now finalized that stipulation and it has been filed with the Court. The parties are awaiting word from Magistrate Judge Spero on when that settlement conference can be accommodated.

**12. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES.**

All Parties have accepted the Magistrate Judge's jurisdiction in accordance with the provisions of 28 U.S.C. § 636(c).

**13. OTHER REFERENCES.**

This case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**14. NARROWING OF ISSUES.**

**A. Plaintiff's Statement.** Plaintiff anticipates filing a motion for summary judgment in order to narrow the issues for trial in this matter. Plaintiff does not believe this case is suitable for any other mechanisms for narrowing or expediting trial presentation.

**B. Defendant's Statement**. As noted above, unless the Court issues a stay sua sponte, Plaintiff is filing a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, a Motion for a Stay of Proceedings, including any discovery. If the matter is not disposed of by the preceding motions, Plaintiff will file a Motion for Summary Judgment or in the alternative a Motion for Summary Adjudication.

**15. EXPEDITED TRIAL PROCEDURE.**

This matter is not suitable for the Expedited Trial Procedure of General Order No. 64 Attachment A.

**16. SCHEDULING.**

Plaintiff proposes that the Court set the following deadlines:

| | | |
|---|---|---|
| | May 29, 2024: | Completion of non-expert discovery (excluding site inspections); |
| | June 19, 2024: | Last day for expert disclosure and exchange of expert reports; |
| | July 10, 2024: | Last day to exchange expert rebuttal reports; |
| | August 14, 2024: | Completion of expert discovery; |
| | November 27, 2024: | Last day for hearing on dispositive motions; |
| | January 18, 2025: | Final pretrial conference; and, |
| | February 9, 2025: | Trial |

Plaintiff contends that the critical period of evidence collection for a Clean Water Act storm water case is during the wet season (November through April) when the Facility at issue is actually discharging storm water. Therefore, the end of non-expert and expert discovery is necessarily contingent on the end of the wet season and has been incorporated in the above proposed deadlines.

Defendants contend that in light of the pending termination of the General Permit and the shuttering of the dairy, that there is no longer any reasonable possibility of any ongoing violation and, if the case is not otherwise dismissed, the schedule for disposition of this case should be truncated from the schedule proposed by Plaintiff. Defendants propose the following schedule:

| | | |
|---|---|---|
| | October 9, 2023: | Completion of non-expert discovery; |
| | November 6, 2023: | Last day for expert disclosure and exchange of expert reports; |
| | December 4, 2023: | Last day to exchange expert rebuttal reports; |
| | January 2, 2024: | Completion of expert discovery; |
| | March 4, 2024: | Last day for hearing on dispositive motions; |
| | April 1, 2024: | Final pretrial conference; and, |

|   |   |
|---|---|
| April 29, 2024: | Trial |

Plaintiff cites site inspections "during the wet season" as the reason for a 2025 trial. There is no need for any such site inspections since as of October 31, 2023 there will be no cattle on the premises. There will be nothing to observe or test.

**17.   TRIAL.**

The Parties estimate the trial will require three (3) to five (5) court days. Defendants have asked for a Jury Trial and believe 4 to 5 days is sufficient

**18.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.**

All Parties have filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.

**19.   PROFESSIONAL CONDUCT.**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully submitted,

Dated: April 21, 2023     LAW OFFICES OF ANDREW L. PACKARD

By:   /s/ Andrew L. Packard
Andrew L. Packard
Attorneys for Plaintiff
CALIFORNIAN SPORTFISHING
PROTECTION ALLIANCE

Dated: April 21, 2023     DICKENSON PEATMAN & FOGERTY

By:   /s/ Richard Idell
Richard Idell
Attorney for Defendants
MULAS DAIRY COMPANY and MICHAEL MULAS

**ATTESTATION FOR E-FILING**

I hereby attest pursuant to Civil L.R. 5-1(i)(3) that I have obtained concurrence in the filing of this document from the above Signatory prior to filing.

Dated: April 21, 2023     By:   /s/ Richard Idell
Richard Idell