RICHARD J. IDELL, SBN 069033
ORY SANDEL, SBN 233204
DICKENSON, PEATMAN & FOGARTY, P.C.
1500 First Street, Ste. 200
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 340-7239
Email: ridell@dpf-law.com
        osandel@dpf-law.com
*Attorneys for Defendants, Mulas Dairy Company and Michael Mulas*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MULAS DAIRY COMPANY AND MICHAEL MULAS,<br><br>Defendants. | CASE NO. 3:23-cv-00338-AGT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS,  OR, IN THE ALTERNATIVE, FOR A STAY OF THE ACTION**<br><br>**[Fed. R. Civ. P. 12(b)(1), 12(b)(6)]**<br><br>**Date**:  Friday, June 2, 2023<br><br>**Time**:  10:00 a.m.<br><br>**Place**:  United States District Court, N.D. Cal.<br>San Francisco Courthouse<br>Courtroom A – Fifteenth Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>(E-filing)<br><br>Hon. Judge Alex G. Tse, Presiding |

TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on 2nd day of June, 2023, at the hour of 10:00 a.m. in the Courtroom of the Honorable Judge Alex G. Tse, located at 450 Golden Gate Avenue, Courtroom A, 15th Floor, San Francisco, California 94102, Defendants Mulas Dairy Company ("Mulas Dairy") and Michael Mulas ("Mulas") (collectively, "Defendants") will move, and do hereby move, this Court for an order dismissing the Complaint in this action, filed on January 23, 2023, by Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA") or, in the alternative, for a stay of the entire action, including as to discovery, pending: (1) the approval of

1  the California Regional Water Quality Control Board, San Francisco Region, of Defendants'

2  January 23, 2023 Notice of Termination of enrollment in General Permit No. CAS000001; and

3  (2) completion of the sale of Defendants' herd of cattle, removal of all cattle from the premised

4  and the shutting down of Defendants' dairy operation, which is slated to begin in May of 2023,

5  when 80 percent of the cattle will be moved, and to be completed on or before October 31, 2023,

6  as to the remaining 20 percent.

7      This Motion is made on the grounds that this Court will not have subject matter

8  jurisdiction over this controversy upon the occurrence of the earlier of: (1) the approval of

9  Defendants' January 23, 2023 Notice of Termination of enrollment in General Permit No.

10  CAS000001; and (2) completion of the sale of Defendants' herd of cattle, removal of the cattle

11  from the premises and the shutting down of Defendants' dairy operation. The Court should

12  dismiss the Complaint because even if there were violations in the past (which is denied), with

13  all of the cattle off the premises, there is no reasonable likelihood of violations in the future. If

14  the Court does not grant the motion to dismiss because there are pending occurrences, the matter

15  should be stayed, including without limitation as to discovery, in order to conserve the parties'

16  and judicial resources.

17      This Motion will be, and is, based upon this Notice of Motion, the within Memorandum

18  of Points and Authorities, the Declarations of Michael Mulas and Paul Sousa in support thereof,

19  and all of the exhibits thereto, and on such other and further documentary and oral evidence and

20  matters as may be brought before the Court on this matter.

21                                      Respectfully submitted,

22                                      DICKENSON, PEATMAN & FOGARTY, P.C.

23  Dated: April 28, 2023          By:   /s/ Richard Idell
                                          Richard Idell (SBN 069033)
24                                        Ory Sandel (SBN 233204)
                                          *Attorneys for Defendants, Mulas Dairy Company*
25                                        *and Michael Mulas*

26

27

28

2

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES…………………………….…………………………………..4

I.      ISSUES TO BE DECIDED. ............................................................................. 6

II.     PROCEDURAL HISTORY................................................................................ 6

III.    RELEVANT FACTS. ........................................................................................ 7

        A.      ALLEGATIONS OF PLAINTIFF'S COMPLAINT............................. 7

        B.      ADDITIONAL RELEVANT FACTS.................................................... 8

IV.     ARGUMENT. .................................................................................................. 11

        A.      RELEVANT LEGAL AUTHORITIES. .............................................. 11

                1.      Legal Standard on Motion to Dismiss for Lack of Subject Matter
                        Jurisdiction. ............................................................................. 11

                2.      Legal Standard on Motion to Dismiss for Failure to State a Claim. ...... 12

                3.      Legal Authorities Relevant to Claims for Violation of the Federal Clean
                        Water Act. ................................................................................ 14

                4.      Legal Standard on Leave to Amend....................................... 15

        B.      THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS. ........................... 16

        C.      IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, THE
                ACTION SHOULD BE STAYED. ..................................................... 16

V.      CONCLUSION. ............................................................................................... 17

1

**TABLE OF AUTHORITIES**

2
                                                                                               **Page(s)**

C<small>ASES</small>

3    *Adams v. Johnson* (9th Cir.2004) 355 F.3d 1179 .......................................................... 14

4    *Atieh v. Riordan* (1st Cir. 2013) 727 F.3d 73 .............................................................. 13

5    *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ........................................................ 12

6    *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449 ............................................................ 14

     *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.* (4th Cir. 1988) 844 F.2d 170 ...... 14
7
     *CMAX, Inc. v. Hall* (9th Cir. 1962) 300 F.2d 265 ........................................................ 17
8
     *Cook v. Brewer* (9th Cir.2011) 637 F.3d 1002 ............................................................. 14
9
     *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048 ....................... 15
10
     *Fayer v. Vaughn* (9th Cir.2011) 649 F.3d 1061 ........................................................... 13
11
     *Foman v. Davis* (1962) 371 U.S. 178 ........................................................................... 15
12
     *Galbraith v. Cty. of Santa Clara* (9th Cir. 2002) 307 F.3d 1119 ................................ 14
13   *Gustavson v. Mars*, Inc. (N.D. Cal. Dec. 10, 2014) No. 13-cv-04537-LHK,
        2014 WL 6986421 ..................................................................................................... 17
14
     *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation* (1987) 484 U.S. 49 .............. 14, 16
15
     *Inland Empire Waterkeeper v. Corona Clay Co.* (9th Cir. 2021) 17 F.4th 825 .............. 11, 14, 16
16
     *Knievel v. ESPN* (9th Cir. 2005) 393 F.3d 1068 .......................................................... 14
17
     *Landis v. N. Am. Co.* (1936) 299 U.S. 248 ................................................................. 16

18   *Lockheed Martin Corp. v. Network Sols., Inc.* (9th Cir.1999) 194 F.3d 980 .............. 15

19   *Lockyer v. Mirant Corp.* (9th Cir. 2005) 398 F.3d 1098 ............................................. 17

     *Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir.2008) 519 F.3d 1025 ............... 13
20
     *Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v.
        Morgan Stanley Investment Mgmt. Inc.* (2nd Cir. 2013) 712 F.3d 705 .................. 13
21
     *Roberts v. Corrothers* (9th Cir. 1987) 812 F.2d 1173 .................................................. 12
22
     *Safe Air for Everyone v. Meyer* (9th Cir. 2004) 373 F.3d 1035 ................................... 12
23
     *Sebastian Brown Prods., LLC v. Muzooka, Inc.* (N.D. Cal. 2015) 143 F.Supp.3d 1026 ............ 13
24
     *Shroyer v. New Cingular Wireless Servs., Inc.* (9th Cir. 2010) 622 F.3d 1035 ........... 13
25
     *Skilstaf, Inc. v. CVS Caremark Corp.* (9th Cir. 2012) 669 F.3d 1005 ......................... 14

26   *Somers v. Apple, Inc.* (9th Cir. 2013) 729 F.3d 953 .................................................... 13

27   *Steel Co. v. Citizens for a Better Env't* (1998) 523 U.S. 83 ......................................... 12

     *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (2007) 551 U.S. 308 .............................. 14
28
     *Whitaker v. Tesla Motors, Inc.* (9th Cir. 2021) 985 F.3d 1173 ................................... 13

     *White v. Lee* (9th Cir. 2000) 227 F.3d 1214 ................................................................. 12

4

1

**TABLE OF AUTHORITIES (cont'd)**

2
<u>**Page(s)**</u>

3
C<small>ASES</small>

4
*Williams v. Gerber Prod. Co.* (9th Cir.2008) 552 F.3d 934 ........................................................ 13

5
S<small>TATUTES</small>

6
33 U.S.C. § 1311 .................................................................................................................. 7

33 U.S.C. § 1365 .................................................................................................................. 7

7
R<small>ULES</small>

8
Fed. R. Civ. P. 12 .......................................................................................................... 11, 12

9
Fed. R. Civ. P. 15 .................................................................................................................. 15

10
R<small>EGULATIONS</small>

40 C.F.R. § 122.23 ................................................................................................................. 8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**      **ISSUES TO BE DECIDED.**

3      1.      Whether this action should be dismissed for lack of subject matter jurisdiction

4 and/or for failure to state a claim, where participation in the General Storm Water Permit has

5 been terminated pursuant to the Notice of Termination.

6      2.      Whether this action should be dismissed for lack of subject matter jurisdiction

7 and/or for failure to state a claim, where there is no reasonable likelihood of violations in the

8 future with all of the cattle removed from the premises and the shutting down of Defendant's

9 dairy operation.

10      3.      In the alternative, whether this matter should be stayed in its entirety, including

11 discovery, pending the earlier of: (1) the approval of the California Regional Water Quality

12 Control Board, San Francisco Region, of Defendants' January 23, 2023 Notice of Termination of

13 enrollment in General Permit No. CAS000001; and (2) completion of the sale of Defendants'

14 herd and removal of cattle from the premises, and the shutting down of Defendants' dairy

15 operation, which is slated to begin in May of 2023, with removal of 80 percent of the cattle by

16 May 31, 2023, , and to be completed on or before October 31, 2023, with removal of remaining

17 20 percent of the cattle.

18

**II.**      **PROCEDURAL HISTORY.**

19      This action was filed on January 23, 2023. Docket No. 1. The parties entered into a

20 stipulation regarding service of the Summons and Complaint, pursuant to which Defendants'

21 response to the Complaint would be due on April 28, 2023, the same date as the initial case

22 management conference.[1] Docket Nos. 7, 11. This motion follows.

23 //

24 //

25 //

26 //

27

28 _____

[1] The points raised and relief requested herein were also addressed in the parties' Joint Case
Management Statement. Docket No. 20.

6

1   III.   **RELEVANT FACTS.**

2        A.   **ALLEGATIONS OF PLAINTIFF'S COMPLAINT.**

3        This case is a Federal Water Pollution Control Act ("Clean Water Act" or "Act") citizen

4   suit enforcement action filed by CSPA under Section 505 of the Clean Water Act, 33 U.S.C.

5   § 1365. Docket No. 1 [Complaint], ¶ 1.

6        The Complaint alleges that Defendants have violated: (1) Section 301(a) of the Clean

7   Water Act, 33 U.S.C. § 1311(a); and (2) the State of California's General Industrial Permit for

8   storm water discharges, State Water Resources Control Board ("State Board") Water Quality

9   Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ, Water Quality

10  Order No. 97-03-DWQ, Water Quality Order No. 2014-0057-DWQ, and Water Quality Order

11  No. 2015-0122, National Pollutant Discharge Elimination System ("NPDES") General Permit

12  No. CAS000001 (hereinafter "General Storm Water Permit"), by discharging pollutants from

13  point sources at Defendants' dairy farm, located at 2034 Freemont Drive, near Sonoma,

14  California (the "Facility"). Docket No. 1 [Complaint], ¶¶ 1, 5-7, 48-52. Each of the four Claims

15  for Relief alleged in the Complaint[2] alleges that Defendants' alleged discharge of pollutants is

16  **"ongoing" and "continuous"**. Docket No. 1 [Complaint], ¶¶ 9, 13, 83, 89, 95, 100. Plaintiff's

17  Complaint is general and conclusionary, and never once states where the so-called "point sources

18  at Defendants' dairy farm" are located, but in any event, Plaintiff's claims are disputed and

19  denied. *See* Mulas Decl., ¶¶ 3-4.

20       The Complaint alleges that facilities covered by the General Storm Water Permit include

21  concentrated animal feeding operations ("CAFO"). Docket No. 1 [Complaint], ¶ 36. To be

22  _____

23  [2] The said Claims for Relief are: (1) Discharges of Contaminated Storm Water from the Facility
    in Violation of Permit Conditions and the Act [First Claim for Relief]; (2) Failure to Develop and
24  Implement an Adequate Storm Water Pollution Prevention Plan for the Facility [Second Claim
    for Relief]; (3) Failure to Develop and Implement the Best Available And Best Conventional
25  Treatment Technologies at the Facility [Third Claim for Relief]; and (4) Failure to Implement an
    Adequate Monitoring Implementation Plan for the Facility [Fourth Claim for Relief]. Docket No.
26  1 [Complaint], ¶¶ 76-101. As set forth below, each Claim for Relief is, or will imminently be,
    mooted by: (1) approval of the Mulas Dairy's Notice of Termination (at which time the Mulas
27  Dairy will no longer be subject to the General Storm Water Permit, effective as of January 23,
    2023); and (2) the sale and other disposition of all of the Mulas Dairy's herd (at which time the
28  Mulas Dairy will no longer be an AFO or a CAFO [as defined]).

7

considered a CAFO, a facility must first be defined as an animal feeding operation ("AFO") and meet the criteria established in the CAFO regulation. Docket No. 1 [Complaint], ¶ 37. An AFO is an agricultural operation where animals are kept and raised in confined situations where the following conditions are met: (1) animals have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period; and, (2) crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility. 40 C.F.R. § 122.23(b)(1). Docket No. 1 [Complaint], ¶ 37. A CAFO is an AFO that is defined as a Large CAFO or as a Medium CAFO by the terms of 40 C.F.R. § 122.23. Docket No. 1 [Complaint], ¶ 38. An operation that confines dairy cows is considered a Large CAFO if the above conditions are met, and it stables or confines at least 700 mature dairy cattle, whether milked or dry. 40 C.F.R. § 122.23(b)(4)(i). Docket No. 1 [Complaint], ¶ 38. Plaintiff alleges that the Facility meets the definition of a Large CAFO. Docket No. 1 [Complaint], ¶¶ 40-41. Plaintiff's claims are disputed and denied. *See* Mulas Decl., ¶¶ 3-4.

## B.    ADDITIONAL RELEVANT FACTS.

Defendant Mulas Dairy Company ("Mulas Dairy") owns property in Sonoma County ("Mulas Land") which, until recently, included an organic dairy operation. Mulas Decl., ¶ 2. The Mulas family has owned the land for over 100 years and operated the dairy for most of that time. *See* Mulas Decl., ¶ 2. The Mulas family are considered good stewards of their land and have been publicly honored by their community as same. Mulas Decl., ¶ 2. The Mulas Land includes approximately 820 acres that the family owns or controls. Mulas Decl., ¶ 2. The dairy operation was comprised of approximately 60 acres. Mulas Decl., ¶ 2.

The Mulas Dairy does not discharge storm water and has not discharged storm water. Mulas Decl., ¶ 3; *see* Sousa Decl., ¶¶ 9-10. Neither has Michael Mulas. Mulas Decl., ¶ 3. Any allegations of discharge of storm water are fully and flatly denied. Mulas Decl., ¶ 3. The allegations of the complaint have no factual basis. Mulas Decl., ¶ 3.

The dairy operation itself was a self-contained area within the Mulas Land that, in simple terms and to use an analogy, is like a bathtub, that is, any storm water falling on the facility drained within the dairy facility and then out to one of five specially designed containment ponds

1   which are regularly maintained and designed to withstand a 24-hour once-in-a-century storm.

2   Mulas Decl., ¶ 4; *see* Sousa Decl., ¶¶ 9-10. Storm water did not leave the dairy facility nor the

3   Mulas Land. Mulas Decl., ¶ 4; *see* Sousa Decl., ¶¶ 9-10. Storm water did not, and does not, leave

4   the dairy facility nor the Mulas Land. Mulas Decl., ¶ 4.

5        All of the dairies in California, at the time of the filing of the Complaint herein, located in

6   the Bay Area, are regulated under California Regional Water Quality Control Board San

7   Francisco Region ("Regional Water Board"), Order No. R2-2016-0031 ("WDR 2016-0031") or

8   its predecessor Order, ***not*** under the General Storm Water Permit (defined above) as alleged by

9   Plaintiff. Mulas Decl., ¶¶ 5-8; Sousa Decl., ¶¶ 1-4, 8.

10       Mulas Dairy is a small, family dairy farming operation that, as a consequence of

11  misinformation and misunderstanding, did in fact enroll, in the General Storm Water Permit

12  years ago. Mulas Decl., ¶ 6. Mulas Dairy also enrolled in the Water Discharge Requirements

13  Order, No. R2-2015-0031  ("WDR 2015-0031") on August 11, 2015. Mulas Decl., ¶ 7. WDR

14  2015-0031 was superseded by Order No. 2016-0031 ("WDR 2016-0031"). Mulas Decl., ¶ 7, Ex.

15  "A". Thus, although Mulas Dairy was enrolled in the General Storm Water Permit, it was not

16  required to be. Mulas Decl., ¶¶ 7-8; *see* Sousa Decl., ¶¶ 1-8.

17       On May 20, 2021, *long before* this lawsuit was filed, and *long before* Mulas Dairy had

18  any idea that a Notice of Violation or lawsuit would be filed, Mulas Dairy wrote to the Regional

19  Water Board and advised them that "the 2021 NPDES report will be the last one", noting that

20  Mulas Dairy had enrolled in the "Tier 2" program. Mulas Decl., ¶ 9, Ex. "B". Tier 2 is pursuant

21  to WDR 2016-0031. *See* Mulas Decl., ¶ 9. Mulas Dairy did not realize that a formal Notice of

22  Intent to terminate was required. Mulas Decl., ¶ 10.

23       The history of Mulas Dairy's permitting in moving from the General Storm Water Permit

24  to the WDR 2016-0031 is consistent with the history of regulation of dairies by the Regional

25  Water Board. Sousa Decl., ¶ 6. As early as 2009, the Regional Water Board recognized that

26  "[c]overage under the General Storm Water Permit is not required for CAFOs[3] that do not

27  directly or indirectly discharge storm water associated with industrial activities to waters of the

28  _____

[3] A "CAFO" is a concentrated animal feeding operation.

MOTION TO DISMISS OR FOR STAY                         CASE NO. 3:23-CV-00338-AGT

1    U.S.  A dairy operator may be able to implement measures that prevent all storm water

2    discharges, and thus may not require coverage under the General Storm Water Permit." Sousa

3    Decl., ¶ 7, Ex. "A". Also, as early as 2009, the Regional Water Board recognized that

4    "[h]istorically, some dairies enrolled under the General Storm Water Permit for reasons other

5    than having a discharge that requires a permit. Those dairies are not required to continue their

6    enrollment if they do not discharge *storm water associated with industrial activities* to *waters of*

7    *the U.S.*; they may submit a "*Notice of Termination*" (*NOT*) to the Regional Water Board.  NOTs

8    take effect only when they are approved by the Regional Water Board." Sousa Decl., ¶ 7, Ex.

9    "A".

10          Such was the history of the Mulas Dairy.

11          On January 23, 2023 – the same date as the Complaint in this action was filed – a Notice

12   of Termination of enrollment in the General Storm Water Permit ("Notice of Termination") was

13   filed online with the Regional Water Board citing Mulas Dairy's enrollment and compliance

14   with WDR 2016-0031 as the reason. Mulas Decl., ¶ 11, Ex. "C".

15          On March 17, 2023, the Regional Water Board held two inspections: (1) an inspection to

16   review compliance with WDR 2016-0031; and (2) an inspection for approval the Notice of

17   Termination. Mulas Decl., ¶ 12. If the Notice of Termination is approved the termination date

18   will be January 23, 2023. Mulas Decl., ¶ 12. It is expected that the inspections will result in

19   reports showing compliance with WDR 2016-0031 and an approval of the Notice of

20   Termination. Mulas Decl., ¶ 12. The Notice of Termination, if approved, as expected, will be

21   approved as of January 23, 2023. Mulas Decl., ¶ 12.

22          If, as expected, the Notice of Termination is approved effective January 23, 2023, there is

23   not, and cannot be, any claim for non-compliance with the General Storm Water Permit; indeed,

24   there is nothing for the citizen enforcer to enforce.

25          In addition, as a factual matter, Mulas Dairy decided, as of the week of April 3, 2023, to

26   sell its herd and terminate its dairy operation. Mulas Decl., ¶ 13. This decision was a direct result

27   of the cost and distraction of this litigation, which has financially overwhelmed this small family

28   operation. Mulas Decl., ¶ 13. Eighty percent (80%) of the herd has already been sold and will be

10

1  removed from the premises by the end of May, 2023. Mulas Decl., ¶ 13, Ex. "D" (redacted to

2  protect proprietary financial information). The balance of the herd will be removed from the

3  dairy and the dairy operation will be shuttered before next winter begins, approximately October

4  31, 2023. Mulas Decl., ¶ 13.

5      Thus, in addition to the Notice of Termination rendering Plaintiff's claim moot, because

6  of the sale of the herd and the shuttering of the dairy, there is no dairy operation to regulate.

7  Even if the General Storm Water Permit were applicable, which is denied and disputed, there is

8  no longer a CAFO at the Facility as alleged by Plaintiff, and therefore no coverage under the

9  General Storm Water Permit. Further, as a result of the sale of the herd and the shut-down of the

10  dairy operation, Mulas will terminate coverage under the WDR 2016-0031 as well.

11      Accordingly, there is not, and cannot possibly be, an "ongoing" or "continuous" violation

12  of either the CWA or the General Storm Water Permit. *See Inland Empire Waterkeeper v.*

13  *Corona Clay Co.* (9th Cir. 2021) 17 F.4th 825, 829, 836. This action should therefore be

14  dismissed.

15      However, if the Court, for any reason, should determine that dismissal is inappropriate at

16  this juncture, in order to conserve the parties' and judicial resources, the action should be stayed

17  in its entirety, including discovery, pending the earlier of: (1) the Regional Water Board's

18  approval of Defendants' January 23, 2023 Notice of Termination of enrollment in General

19  Permit No. CAS000001; and (2) completion of the sale of Defendants' herd of cows and the

20  completion of shut down of Defendants' dairy operation, which is slated to occur on or before

21  October 31, 2023.

22      This Motion should be granted.

23  **IV.   ARGUMENT.**

24      **A.   RELEVANT LEGAL AUTHORITIES.**

25          **1.   Legal Standard on Motion to Dismiss for Lack of Subject Matter**
                   **Jurisdiction.**

26      A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject

27  matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of

28  subject matter jurisdiction when the claim is "so insubstantial, implausible, foreclosed by prior

1    decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a

2    federal controversy." *Steel Co. v. Citizens for a Better Env't* (1998) 523 U.S. 83, 89, 118 S.Ct.

3    1003, 140 L.Ed.2d 210 (citation and quotation marks omitted).

4          A court reviewing a Rule 12(b)(1) motion modifies its approach depending on whether

5    the motion is "facial" or "factual." *White v. Lee* (9th Cir. 2000) 227 F.3d 1214, 1242. A facial

6    challenge asserts that "the allegations contained in a complaint are insufficient on their face to

7    invoke federal jurisdiction." *Safe Air for Everyone v. Meyer* (9th Cir. 2004) 373 F.3d 1035, 1039.

8    A factual challenge disputes the truth of the allegations that, by themselves, would otherwise

9    invoke federal jurisdiction. *Ibid.* A factual challenge permits the court to look beyond the

10   complaint, without presuming the truthfulness of the plaintiff's allegations. *White v. Lee*, *supra*,

11   227 F.3d at 1242 (citation omitted). The presence of disputed material facts does not preclude the

12   trial court from evaluating for itself the merits of jurisdictional claims. *Roberts v. Corrothers* (9th

13   Cir. 1987) 812 F.2d 1173, 1177 (citations omitted).

14         On this Motion, Defendants contest the truthfulness of Plaintiff's allegations that they

15   violated the Clean Water Act by discharging polluted storm water in excess of the limits in the

16   General Storm Water Permit. Defendant's jurisdictional attack is factual in nature; the Court

17   therefore does not presume the truthfulness of Plaintiff's allegations, and may look beyond the

18   allegations of Plaintiff's Complaint to resolve the jurisdictional dispute.

19              **2.**    **Legal Standard on Motion to Dismiss for Failure to State a Claim.**

20         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss

21   based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

22   A Rule 12(b)(6) motion tests the sufficiency of a complaint by failing to allege "enough facts to

23   state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* (2007) 550 U.S.

24   544, 570.

25         Although, in reviewing a motion to dismiss for failure to state a claim, the Court must

26   accept as true the factual allegations of the Complaint, it may dismiss the case where there is

27   either: (1) no cognizable legal theory; or (2) an absence of sufficient facts alleged to support a

28   cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.* (9th Cir. 2010) 622 F.3d

1   1035, 1041 (citation and quotation marks omitted); *Manzarek v. St. Paul Fire & Marine Ins. Co.*
2   (9th Cir.2008) 519 F.3d 1025, 1031.

3        Even when a complaint presents a cognizable legal theory, the Court may grant a motion
4   to dismiss if the complaint lacks "sufficient factual matter to state a facially plausible claim to
5   relief." *Id.* (citing *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868). A
6   claim has facial plausibility when a "plaintiff pleads factual content that allows the court to draw
7   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
8   *Iqbal*, *supra*, 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted). The factual allegations must be
9   enough to raise a right to relief above the speculative level. *Williams v. Gerber Prod. Co.* (9th
10  Cir.2008) 552 F.3d 934, 938 (citation and quotation marks omitted).

11       The "plausibility standard" asks for "more than a sheer possibility that a defendant has
12  acted unlawfully." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678. The purpose of the plausibility
13  requirement is to prevent settlement extortion, for example, using discovery to impose
14  asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff
15  regardless of the merits of his suit. *See, e.g.*, *Somers v. Apple, Inc.* (9th Cir. 2013) 729 F.3d 953,
16  966 ("specificity of facts is warranted before permitting a case to proceed into costly and
17  protracted discovery"); *see also, e.g.*, *Pension Benefit Guaranty Corp. ex rel. St. Vincent*
18  *Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.* (2nd Cir. 2013)
19  712 F.3d 705, 719; *Atieh v. Riordan* (1st Cir. 2013) 727 F.3d 73, 76 ("The plausibility standard is
20  a screening mechanism designed to weed out cases that do not warrant either discovery or trial").
21  A plaintiff is not permitted to rely on anticipated (and costly) discovery to satisfy Rules 8
22  and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations *before* advancing to
23  discovery. *Whitaker v. Tesla Motors, Inc.* (9th Cir. 2021) 985 F.3d 1173, 1177.

24       Moreover, the Court is not required to assume the truth of legal conclusions "merely
25  because they are cast in the form of factual allegations." *Sebastian Brown Prods., LLC v.*
26  *Muzooka, Inc.* (N.D. Cal. 2015) 143 F.Supp.3d 1026, 1033 (quoting *Fayer v. Vaughn* (9th
27  Cir.2011) 649 F.3d 1061, 1064). Mere conclusory allegations of law and unwarranted inferences
28  "are insufficient to defeat a motion to dismiss." *Id.* (quoting *Adams v. Johnson* (9th Cir.2004)

355 F.3d 1179, 1183). Courts may dismiss a claim if it appears that the plaintiff could prove "no set of facts" in support of a claim which would entitle the plaintiff to relief. *See Cook v. Brewer* (9th Cir.2011) 637 F.3d 1002, 1004.

For purposes of a Rule 12(b)(6) motion, the court reviews documents incorporated into the complaint as well as judicially noticeable material. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (2007) 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179; *Knievel v. ESPN* (9th Cir. 2005) 393 F.3d 1068, 1076-1077 (incorporation by reference); *Skilstaf, Inc. v. CVS Caremark Corp.* (9th Cir. 2012) 669 F.3d 1005, 1016 fn.9 (judicial notice). The court may also consider documents whose contents are alleged in the Complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *See Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454, *overruled on other grounds by Galbraith v. Cty. of Santa Clara* (9th Cir. 2002) 307 F.3d 1119.

### 3.   Legal Authorities Relevant to Claims for Violation of the Federal Clean Water Act.

The Clean Water Act bars citizen suits, such as this action, that allege only "wholly past" violations of permits. *Inland Empire Waterkeeper v. Corona Clay Co.* (9th Cir. 2021) 17 F.4th 825, 829 (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation* (1987) 484 U.S. 49, 67, 108 S.Ct. 376, 98 L.Ed.2d 306). Neither the Notice of Violation, attached as Exhibit 1 to the Complaint, nor Plaintiff's Complaint itself states where the so-called "point sources at Defendants' dairy farm" are located, and the allegations are general and conclusionary. Nevertheless, if the required jurisdictional discharge into United States waters has occurred – which has not happened here, *see* Mulas Decl., ¶¶ 3-4 – a Clean Water Act citizen suit can be premised on "ongoing or reasonably expected" violations. *Inland Empire Waterkeeper v. Corona Clay Co.* (9th Cir. 2021) 17 F.4th 825, 829, 836. An "ongoing" violation of Clean Water Act may be shown either (1) by proving violations that *continue* on or after the date the complaint is filed or (2) by adducing evidence from which a reasonable trier of fact could find a *continuing likelihood of a recurrence* in intermittent or sporadic violations. *See Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.* (4th Cir. 1988) 844 F.2d 170, 171-172. There are no such

MOTION TO DISMISS OR FOR STAY                                    CASE NO. 3:23-CV-00338-AGT

1   allegations, nor can there be, since the Notice of Termination is reasonably expected to be

2   approved and, most significantly, the dairy operation is being shuttered.

3   As set forth in Section III.B., above, Defendants do not discharge, and have not

4   discharged, storm water; all storm water falling on the dairy facility drained within the dairy

5   facility and, from there, out to one of five specially-designed containment ponds which are

6   regularly maintained. Thus, storm water did not leave the dairy facility nor the Mulas Land, and

7   no discharge into United States waters has occurred. Those containment ponds are designed to

8   withstand a 24-hour once-in-a-century storm. Storm water did not leave the dairy facility nor the

9   Mulas Land. Mulas Decl., ¶¶ 3-4.

10   Further, based on the authority of the *Gawltney* and *Inland Empire Waterkeeper* cases,

11   Plaintiff must prove both that a discharge has occurred *and* that there are "ongoing", "imminent"

12   or "reasonably expected" violations of the Clean Water Act. Plaintiff will be unable to meet this

13   burden, since: (1) Defendants fully expect that the Regional Water Board will approve

14   Defendants' January 23, 2023 Notice of Termination of enrollment in General Permit No.

15   CAS000001; and (2) Defendants are shutting down their dairy operation, have already sold 80%

16   of their herd of cattle and will be disposing of the other 20% of the herd by the end of October of

17   2023. There is no reasonable likelihood of a continuing violation. As such, Plaintiff's claims

18   must be dismissed.

19   **4.    Legal Standard on Leave to Amend.**

20   Under Federal Rule of Civil Procedure 15, after the defendant files a responsive pleading,

21   leave to amend the pleadings before trial should be given "freely", but only "when justice so

22   requires." Fed. R. Civ. P. 15(a)(2).

23   Although this policy is applied liberally, the Court may deny leave to amend if an

24   apparent reason for such denial exists, such as a bad faith or dilatory motive, prejudice to the

25   defendants, or futility of any amendment. *Foman v. Davis* (1962) 371 U.S. 178, 182, 83 S.Ct.

26   227, 9 L.Ed.2d 222; *Lockheed Martin Corp. v. Network Sols., Inc.* (9th Cir.1999) 194 F.3d 980,

27   986. Consideration of prejudice to the opposing party carries the greatest weight. *Eminence*

28   *Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1052.

MOTION TO DISMISS OR FOR STAY                    CASE NO. 3:23-CV-00338-AGT

Where, as here, Mulas was not required to enrolled in the General Storm Water Permit, Sousa Decl., ¶¶ 1-8, the Mulas Dairy's Notice of Termination is expected to be approved. In addition, since the Mulas Dairy is being shut down, any amendment of the Complaint would be futile because there is no way to plausibly allege a continuing violation. As such, this Motion should be granted without leave to amend.

## B.     THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS.

As more fully set forth above, *see* Section III.B., *supra*, the allegations of Plaintiff's Complaint are without factual basis and should be dismissed, but regardless, the Court will have no subject matter jurisdiction over this action by no later than October 31, 2023.

A plaintiff may only bring a citizen suit for future or ongoing violations of the Clean Water Act. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.* (1987) 484 U.S. 49, 64, 66, 108 S.Ct. 376, 98 L.Ed.2d 306. A citizen suit based on wholly past violations, with no reasonable expectation that the alleged wrong will be repeated, is moot. *Id.* at 66-67, 108 S.Ct. 376; *Inland Empire Waterkeeper v. Corona Clay Co.* (9th Cir. 2021) 17 F.4th 825, 829, 836.

Once the Regional Water Board approves Defendants' Notice of Termination, Defendants will no longer be subject to the General Storm Water Permit, effective as of January 23, 2023 (the same date that Plaintiff filed this action). There is thus no reasonable expectation that Defendants will violate the General Storm Water Permit in the future. Moreover, since the Mulas Dairy is shutting down, there is no reasonable expectation that Defendants will violate the General Storm Water Permit or the Clean Water Act in the future, or that any violation could possibly be "ongoing" or "imminent": the Mulas Dairy will no longer be a CAFO once the sale of 80% of its herd has been completed, and it will no longer even be an AFO once the remaining 20% of the herd is removed.

Accordingly, this action should be dismissed without leave to amend.

## C.     IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, THE ACTION SHOULD BE STAYED.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.* (1936) 299 U.S. 248, 254. A district court has

16

1    broad discretion in granting a stay, "particularly in this time of scarce judicial resources and

2    crowded dockets." *Lockyer v. Mirant Corp.* (9th Cir. 2005) 398 F.3d 1098, 1112.

3         A court weighs three factors in determining whether to grant a stay: (1) the possible

4    damage which may result from the granting of a stay; (2) the hardship or inequity which a party

5    may suffer in being required to go forward; and (3) the orderly course of justice measured in

6    terms of the simplifying or complicating of issues, proof, and questions of law which could be

7    expected to result from a stay. *CMAX, Inc. v. Hall* (9th Cir. 1962) 300 F.2d 265, 268. In applying

8    the third factor, considerations of judicial economy are highly relevant. *Gustavson v. Mars*, Inc.

9    (N.D. Cal. Dec. 10, 2014) No. 13-cv-04537-LHK, 2014 WL 6986421, at *3.

10        A stay of this entire proceeding, including discovery, is appropriate, given the lack of

11   merit of Plaintiff's Complaint, and the impending closure and shuttering of the Mulas Dairy.

12   First, there is no possible damage that may result from the granting of the stay since, as set forth

13   above, there is no likelihood, or even possibility, of an "ongoing", "imminent" or "reasonably

14   expected" violation of the Clean Water Act. Second, Defendants have *already* suffered

15   significant hardship and inequity by having had to defend this suit to date: the cost of this

16   litigation, including related discovery, has, and continues to, financially overwhelm the small

17   family operation. Mulas Decl. ¶ 13. Third, a stay can reasonably be expected to clarify the status

18   of: (1) the Notice of Termination; and (2) the sale of the Mulas Dairy's herd of cows, thereby

19   simplifying issues, proof, and questions of law.

20        Thus, should the Court determine that this action should not be dismissed outright at this

21   juncture, it should nevertheless impose a stay of the action, including as to discovery, pending:

22   (1) the decision of the Regional Water Board on approval of Defendants' Notice of Termination;

23   and (2) completion of the sale of Defendants' herd of cows and the shutting down of Defendants'

24   dairy operation.

25   **V.    CONCLUSION.**

26        For all of the reasons set forth herein, the Court should grant this Motion and either

27   dismiss or stay this action pending the earlier of: (1) the approval of the California Regional

28   Water Quality Control Board, San Francisco Region, of Defendants' January 23, 2023 Notice of

1    Termination of enrollment in General Permit No. CAS000001; and (2) completion of the sale of

2    Defendants' herd of cows and the shutting down of Defendants' dairy operation, which is slated

3    to occur on or before October 31, 2023.

4                                              Respectfully submitted,

5                                              DICKENSON, PEATMAN & FOGARTY, P.C.

6    Dated: April 28, 2023            By:    /s/ Richard Idell

7                                              Richard Idell (SBN 069033)
                                               Ory Sandel (SBN 233204)
8                                              *Attorneys for Defendants, Mulas Dairy Company
                                               and Michael Mulas*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18