RICHARD J. IDELL, SBN 069033
ORY SANDEL, SBN 233204
DICKENSON, PEATMAN & FOGARTY, P.C.
1500 First Street, Ste. 200
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 340-7239
Email: ridell@dpf-law.com
osandel@dpf-law.com
*Attorneys for Defendants, Mulas Dairy Company and Michael Mulas*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,

Plaintiff,

vs.

MULAS DAIRY COMPANY AND MICHAEL MULAS,

Defendants.

CASE NO. 3:23-cv-00338-AGT

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR A STAY OF THE ACTION**

**[Fed. R. Civ. P. 12(b)(1), 12(b)(6)]**

**Date**: Friday, August 4, 2023

**Time**: 10:00 a.m.

**Place:** United States District Court, N.D. Cal.
San Francisco Courthouse
Courtroom A – Fifteenth Floor
450 Golden Gate Avenue
San Francisco, CA 94102

(E-filing)

Hon. Judge Alex G. Tse, Presiding

COME NOW Defendants Mulas Dairy Company ("Mulas Dairy") and Michael Mulas ("Mulas") (collectively, "Defendants") and hereby file this reply brief in support of their motion for an order dismissing the Complaint in this action, filed on January 23, 2023 by Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), or, in the alternative, for a stay of the entire action ("Motion"), as follows:

//

//

## I. **INTRODUCTION AND SUMMARY OF ARGUMENT.**

Plaintiff's papers in opposition to this Motion are long on unsupported factual assumptions, presumptions and speculation, and short on verifiable facts.

The Clean Water Act ("CWA") undoubtedly prohibits discharge of pollutants. But the Mulas Dairy Company has never discharged any such pollutants. Its dairy facility, depicted in Paragraph 50 of the Complaint, is designed like a bathtub, so that when the facility was operating (which it no longer is), stormwater and waste material from the cattle at all times flowed into a series of five containment ponds designed to withstand the flow of a 24-hour, once-in-a-century storm event.

Plaintiff's Opposition claims that there is an "unnamed creek" that "runs through Defendants' animal confinement area." Not so. The so-called "unnamed creek" to which Plaintiff refers is actually a man-made drainage swale that carried stormwater from the nearby Carneros Highway (located to the north of the dairy) in a southerly direction, on the east side of the dairy facility. The drainage swale empties onto land owned by Defendants. Storm water from the dairy facility did not, and does not, discharge into that drainage swale. That drainage swale carries storm water from many sources, including the highway, vineyards, commercial and residential properties, to the east of the Mulas property. The drainage swale, and the area into which it drains, are not "waters of the United States" and do not flow into "waters of the United States".

In good faith, Defendants brought this Motion pending completion of two developments: Either formal approval of a Notice of Termination of the General Permit (which Mulas was not required to have) or completion of sale and shipping out of the herd of cattle. The Motion was brought because judicial and party resources should be conserved where, as here, it is absolutely clear that the allegedly wrongful behavior (which is fully denied) could not reasonably be expected to recur.

Plaintiff's speculation of possible future recurrences has no basis in fact. Plaintiff's Opposition makes several unsupported contentions and assertions, including:

a. "The herd has not yet been removed from the facility." Opposition at 5:27-28. As set forth in the Declaration of Michael Mulas, the removal of the herd has begun, is

ongoing; the majority of the herd will be shipped out by the end of May, 2023, and the remaining cattle will be shipped out and the herd disbursed completely by the end of October. Proof of the sale was tendered with the moving papers. *See* Mulas Decl., ¶ 13, Ex. "D" [Docket No. 23-7].

b. "The dairy has not yet been closed" Opposition at 5:28. This statement is, generously stated, misleading. The vast majority of the dairy cattle have been removed and, without dairy cattle, there is no dairy. *See* Supp. Mulas Decl., ¶¶ 3-5.

c. "Defendants could resume their unlawful pollution discharges by simply re-introducing cows to the diary, and starting the operation back up again after this litigation is resolved." Opposition at 6:2-4. This speculation and hyperbole is unfounded and unsupported. *See* Supp. Mulas Decl., ¶¶ 3-5.

Plaintiff asserts that even if the herd is removed, and the dairy closed, Defendants will remain liable for civil penalties under the CWA. Opposition at 13:9-10. Even if Plaintiff could prove past violations (which is denied), this assertion is contrary to the Supreme Court's holding that a suit under the CWA cannot be maintained for purely past violations. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Moreover, there are no past violations. *See* Mulas Decl., ¶¶ 2-4; Supp. Mulas Decl., ¶ 2. Thus, there are certainly no "continuous or intermittent" violations. *Cf. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, supra, 484 U.S. at 64. Plaintiff's allegations of such "continuous or intermittent" violations are contrary to the undisputed evidence and not in good faith.

Given the sale of the herd and impending approval of the Notice of Termination of the General Storm Water Permit, there is no reasonable likelihood that Defendants' will violate the CWA in the future. In other words, it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Cf.* Opposition at 13:2-3.

In the alternative, Defendants seek a stay of these proceedings, including discovery[1], until the herd is completely removed from the premises and final approval of the Notice of Termination is given by the State Water Board. Since both of the triggers, removal of the herd and/or final approval of the State Water Board of the Notice of Termination, will moot this action, the Motion should be granted, but, should the Court determine that both factual circumstances should ripen further before dismissing the case, the Court should stay this action until those two occurrences are indeed a *fait accompli*. The stay should alternatively be granted as no prejudice accrues to Plaintiff from the requested stay.

## II. <u>ARGUMENT</u>

### A. TERMINATION OF THE GENERAL PERMIT AND SALE OF THE DAIRY HERD MOOT THE RELIEF SOUGHT BY THE COMPLAINT AND DEPRIVE THE COURT OF JURISDICTION.

As noted above, Plaintiff's Opposition to this Motion is long on speculation and short on facts. CSPA's arguments make sense only if one overlooks Plaintiff's many misstatements and obfuscations.

The simple and undisputed facts, which *are* supported by the evidence submitted by Defendants on this Motion, are as follows:

---

[1] In order to allow Plaintiff to prepare for the settlement conference in this action (now scheduled for June 22, 2023 before Judge Spero), Defendants have agreed that, in the event of an anticipated rain event, Plaintiff may have a "wet" site inspection on 72 hours prior notice, or, alternatively, a dry inspection on May 31, 2023 if there is no rain event before then. Such site inspection will be pursuant to Plaintiff's notices of inspection of the premises and conducted as discovery in the case, and not as a confidential inspection in connection with settlement discussions. Defendants so agreed in order to ensure their full compliance with the Settlement Conference Order issued by Judge Spero, which indicates that the parties are to cooperate in providing discovery necessary to prepare for the settlement conference. Defendant does not, by this Motion, seek a stay of Plaintiff's site inspection. Plaintiff's noticed site inspection is *in addition to* the settlement site inspection that Defendants agreed to and which took place on January 31, 2023, during the wettest winter in years. Defendants have nothing to hide, and Plaintiff has had more than ample opportunity to understand that its claims have no merit.

At the same time, Defendants requested that Plaintiff respond on somewhat shortened time (20 days instead of 30 days) to a single interrogatory propounded by Defendants. In stark contrast to Defendants, Plaintiff <u>flatly</u> <u>refused</u> Defendants' request, insisting that either: (a) Plaintiff's response would not be under oath; or (b) Plaintiff's response would be served on regular time (30 days).

- The Mulas Dairy does not, and has never, discharged stormwater from its dairy facility. Mulas Decl., ¶¶ 2-4; Supp. Mulas Decl, ¶ 2; Sousa Decl., ¶¶ 4, 9-10.
- All storm water from the dairy facility runs to the containment ponds that were specially designed for that purpose and are designed to withstand a once-in-a-century 24-hour storm event. Mulas Decl., ¶ 4; Sousa Decl., ¶ 9-10.
- The Mulas Dairy's herd of cattle is being *entirely* disposed of: Defendants provided the Court with a copy of the executed sales contract, and the transport of cows from the property is well under way. *See* Mulas Decl., ¶ 13, Ex. "D"; Supp. Mulas Decl, ¶¶ 3-4.
- Once approved by the Regional Water Board, the Mulas Dairy's Notice of Termination will be effective as of the original January 23, 2023 submittal date. Mulas Decl., ¶¶ 11-12; Supp. Mulas Decl, ¶¶ 6-8, Ex. "A".
- Defendants have quit the dairy business, and there can be no reasonable expectation that the allegedly wrongful behavior will recur. Mulas Decl., ¶¶ 5-13; Supp. Mulas Decl, ¶ 3-8.

Thus, contrary to the unsubstantiated material allegations of Plaintiff's Complaint – notably alleged *entirely* on information and belief, *see* Docket No. 1 [Complaint], ¶¶ 39-48, 50-52 – there has been *no* violation of the Clean Water Act, much less a "continuous or intermittent" violation. As Plaintiff admits, *see* Opposition at 12:11-15, in the absence of "a good faith allegation of continuous or intermittent violation", the Court has no jurisdiction. The allegations of Plaintiff's Complaint are not, and cannot be, made in good faith because they run directly contrary to reality. Defendants have met their burden of showing the factual basis for the mootness of Plaintiff's purported claims.

Without any basis whatsoever, Plaintiff speculates that after removal of the cows, Defendants could, at some future time, resume operation of the dairy facility. There is no evidence to support such a notion, and all of the evidence shows that the facts are exactly the opposite, namely, that the Mulas family has quit the dairy business.

Likewise, Plaintiff's unsupported assertion that the Notice of Termination might not be approved is pure speculation. Plaintiff contends, without authority, that the General Storm Water Permit and WDR 2016-0031 "regulate different discharges", and that "even if Defendants were in compliance with the WDR [R2-2016-0031], that would not preclude them from needing coverage under the General [Storm Water] Permit." Opposition at 16:19-20. Not so.

Plaintiff's argument is a red herring. *There is no right to discharge* under WDR 2016-0031, just as *there is no right to discharge* under the General Storm Water Permit. In compliance with both, Mulas Dairy *does not discharge*. Mulas Decl., ¶¶ 2-4; Supp. Mulas Decl, ¶ 2. The Declaration of Paul Sousa, Docket Nos. 23-1, 23-2, explains the historical interplay between the General Storm Water Permit and the WDR 2016-0031 dairy permit (Tier 2). The State Water Board recognized, as early as 2009, that there was significant confusion and misinformation about which program dairies came under, and that dairies were terminating coverage under the General Storm Water Permit because they were covered under WDR 2016-0031. *See* Sousa Decl., ¶¶ 1-8.

Plaintiff further claims, without authority, that in order to accomplish a termination of the General Storm Water Permit, there must be a certification that all "closure activities be completed before the Notice of Termination can be submitted[.]" Opposition at 17: 3-4. Again, this is simply not so, and Plaintiff offers no authority for that proposition. Like all dairies, the Mulas Dairy was enrolled in WDR 2016-0031 and, from the time of such enrollment, there was no longer any necessity for the General Storm Water Permit.

There is no basis for the Court to exercise subject matter jurisdiction, and this Motion should be granted.

**B. THE ALLEGEDLY WRONGFUL BEHAVIOR CANNOT REASONABLY BE EXPECTED TO RECUR.**

As a matter of law, Plaintiff can only state a claim if there is a reasonable likelihood of "continuous or intermittent" violations of the CWA. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

Plaintiff argues that the allegations of the Complaint are sufficient to sustain a claim under the CWA. Those allegations are just that: allegations. Defendants' Motion is based on facts, supported by declarations stated under penalty of perjury. The evidence submitted by Defendants shows that, with the pendency of the approval of the Notice of Termination and the sale of the herd, there is no reasonable likelihood of a "continuous or intermittent" violation of the CWA. Plaintiff's allegations are insufficient to show otherwise.

Plaintiff further argues that "[i]n addition to 'discharge' violations, 'it is settled that violations of a permit's 'requirements for retaining records of discharge sampling and for filing reports' can be the subject of a Clean Water Act citizen suit." Opposition at 17:18-23 (citing *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832-833 (9th Cir. 2021). However, and notably, nowhere in the Complaint does Plaintiff allege that Defendants have failed to retain records of discharge sampling or that Defendants have failed to file required reports, or even that Defendants failed to provide statutorily-required information in their reports.

Instead, Plaintiff makes the bare (and vague) allegation that "Defendants' violations of the filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of the General Permit and the Act are ongoing and continuous." Docket No. 1 [Complaint], ¶ 9. This allegation is insufficient to overcome the weight of the evidence submitted in support of this Motion. But even if Plaintiff had alleged that Defendants have failed to retain records of discharge sampling or that Defendants have failed to file required reports, Plaintiff cannot in good faith alleged that such failures are "continuous or intermittent" given that the Mulas Dairy is shutting down, and a Clean Water Act case cannot be maintained for solely past violations.

In the face of the evidence, none of the allegations of Plaintiff's Complaint provide a basis for the exercise of subject matter jurisdiction. Accordingly, this Motion should be granted.

### C. IF THE MOTION TO DIMISS IS NOT GRANTED, THE MATTER SHOULD BE STAYED.

If the Motion to Dismiss is not granted, Defendants have moved, in the alternative, for a stay of the matter, including discovery, until the earlier of: (a) final approval by the State Water

Board of the Notice of Termination; or (b) completion of removal of the herd from the premises. No prejudice would accrue to Plaintiff from a stay of this action pending one, or both, of these occurrences.

Plaintiff argues, without factual support, that "Defendants continue to operate their dairy in violation of the General Permit, and will do so each day until their Permit is terminated or the herd is sold and operation closed." Opposition 22:16-18. These assertions are of whole cloth; indeed, these assertions are nonsensical. Defendants cannot operate a dairy without dairy cattle. The herd has been sold, the transaction is in fully in process (by delivery of the cattle to the buyer in Texas) and there is no turning back. *See* Supp. Mulas Decl., ¶¶ 3-5.

While Defendants have no control over the timing of the State Water Board's approval of their Notice of Termination, the Notice of Termination has been filed, there was a related inspection on March 17, 2023, and a report will issue in due course. Once approved, the approval date will be "backdated to the original [January 23, 2023] submittal date" of the Notice of Termination. Mulas Decl., ¶¶ 9-12, Exs. "B", "C"; Supp. Mulas Decl., ¶¶ 6-8, Ex. "A".

Under either circumstance, Plaintiff will suffer no prejudice from a stay.

Although Plaintiff claims that staying this action "allows Defendants to continue violating the Clean Water Action with impunity", Opposition at 22:22-23, such claim is empty hyperbole.

First, there has been no violation of the Clean Water Act, since Defendants do not discharge. Mulas Decl., ¶¶ 3-4; Supp. Mulas Decl., ¶ 2. Plaintiff's allegations of "discharge" are nothing more than allegations, alleged on information and belief, and entirely unsupported by any evidence.

Second, the Mulas family has owned the Mulas property for over a century and has operated a dairy on the property for most of that time. Mulas Decl., ¶ 2. It would make no sense for the Mulas family to take the drastic step of selling their entire herd of dairy cattle unless they were quitting the dairy business. This is, in fact, precisely what the Mulas family is doing. Supp. Mulas Decl., ¶ 5. Plaintiff's point to the so-called "Facility" housing the dairy cattle as the culprit of the alleged discharge, but, of course, without cattle in the "Facility", there cannot be any

discharge and, hence, there can be no violation of the Clean Water Act – even if the "Facility" were not built like a bathtub to prevent discharge (which it is).

Defendants will attend and participate in good faith in the settlement conference set for June 22, 2023. Defendants have been trying to settle this case since even before the Complaint was filed; indeed, Defendants urged Plaintiff to discuss settlement and for that reason agreed to the January 31, 2023 site inspection. *See* footnote 1, *supra*. Plaintiff nevertheless insisted that it "must" file the Complaint, forcing Defendants to expend thousands of dollars on legal fees and the parties and the Court to expend resources in connection with the proceedings that have occurred to date. The parties agreed at the case management conference to move the date of the hearing on this Motion from June 2, 2023 to August 4, 2023, such that the Motion would be pending at the time of the Settlement Conference. Thus, at least pending the Settlement Conference, resources (of the parties and the Court) should not be needlessly expended. The same principle applies more generally, pending either the approval of the Notice of Termination or the complete removal of all of the cattle from the Mulas property, either of which will render Plaintiff's claims completely moot. Accordingly, a stay of the action, including as to discovery, is appropriate and should be ordered in the event the case is not dismissed outright.

## III. CONCLUSION.

For all of the reasons set forth herein and in the moving papers, this Motion to Dismiss should be granted. In the alternative, the Court should stay this action, including as to discovery, until all cattle are finally removed from the facility and/or the Notice of Termination of the General Storm Water Permit is issued.

Respectfully submitted,

DICKENSON, PEATMAN & FOGARTY, P.C.

Dated: May 19, 2023

By: /s/ Richard Idell
Richard Idell (SBN 069033)
Ory Sandel (SBN 233204)
*Attorneys for Defendants, Mulas Dairy Company and Michael Mulas*